1999-NMCA-072

983 P.2d 421

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Cecil Howard DAWSON, Defendant–
Appellant.**

No. 19,409.

Court of Appeals of New Mexico.

April 8, 1999.

Patricia A. Madrid, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for Appellee.

Cecil Howard Dawson, Albuquerque, Representing Himself.

*OPINION*

HARTZ, Judge.

{1} Defendant appeals his conviction for concealing identity, contrary to NMSA 1978, Section 30–22–3 (1963). He raises a variety of issues, which we consolidate into the following four groupings: (1) whether the district court correctly interpreted the requirements of Section 30–22–3; (2) whether there was sufficient evidence to convict him; (3) whether his constitutional rights were violated; and (4) whether jurisdiction was proper. We affirm.

*BACKGROUND*

{2} On September 12, 1997, Officer Nina Fox of the University of New Mexico (UNM) police department was on routine patrol duty in full uniform in UNM's north parking area. She saw a Dodge pickup with a camper shell parked on UNM property on a dirt lot north of 1213 University Boulevard. The vehicle had neither a license plate nor a UNM parking sticker. Fox observed Defendant in the camper, lying in bed reading. She intended to ask him to remove the vehicle from UNM property but wanted to assure herself that he could legally drive the vehicle. After identifying herself, she asked Defendant to get out of the camper and speak with her. Defendant declined to leave the camper but came to the window. Fox requested him to produce his vehicle registration and insurance and a picture identification. Defendant refused. Fox explained to him that he was on UNM property and again asked to see the documents. Defendant said that she had no justification to ask for that information and closed the camper window. Fox then called for assistance.

{3} When UNM police Sergeant Dewey Fowler arrived at the scene, also in uniform, he knocked on the door of the camper with his baton. Defendant eventually responded. Fowler asked him two or three times to identify himself. Finally, Defendant gave what he termed his "nativity" date and stated his name as "Mr. Dawson." He refused to get out of his camper and said that the officers could not trespass on his property. He claimed that the land was owned by a church. The officers told him that he was on UNM property and needed a permit to park where he was. He asked to see a map, but the officers did not have one with them. No signs on the dirt lot identified it as UNM property or stated that a UNM permit was required to park there. On a building adjacent to the lot, however, was a sign that said "University of New Mexico."

{4} Fowler called for additional backup. Corporal William Flint of the UNM police responded. He, too, was in full uniform. He approached the camper, told Defendant why the officers needed the information, and requested that Defendant supply it. After re-

fusing at first, Defendant provided his first name, then eventually his full name. Defendant asked Flint at least twice to show him signs, maps, or other indications that the property belonged to UNM.

{5} Defendant was charged with criminal trespass, resisting an officer, and concealing his identity. After a jury trial in metropolitan court, Defendant was convicted of concealing his identity; he prevailed on a motion for directed verdict on the other charges. The district court affirmed the conviction after a trial de novo, pursuant to NMSA 1978, Section 34-8A-6(D) (1993). This appeal followed.

## INTERPRETATION OF SECTION 30-22-3

{6} Section 30-22-3 states:

Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

Whoever commits concealing identity is guilty of a petty misdemeanor.

Defendant contends that the district court erred in interpreting the statute (1) as requiring a person to *prove* his or her identity, (2) as prohibiting the failure to respond to a request for one's name, and (3) as setting a time limit within which a response must be made.

{7} We need not address the first contention. Contrary to Defendant's assertion in his briefs, the district court never suggested that Defendant's conviction was predicated on his failure to prove his identity. His guilt was founded on his delay in providing his name, the accuracy of which has not been challenged by the State.

{8} The other two contentions require us to construe Section 30-22-3. The interpretation of a statute is a matter of law, which we review de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). Unless the context suggests the contrary, we interpret statutory language in accordance with its common meaning. *See*

*Villanueva v. City of Tucumcari,* 1998-NMCA-138, ¶ 8, 125 N.M. 762, 965 P.2d 346.

{9} Section 30-22-3 prohibits "concealing one's true name or identity." Defendant argues that this can be accomplished only by giving a false name, not by simply failing to respond to a request for one's name. He reads the word "concealing" too narrowly. The common meanings of "conceal" include "prevent disclosure or recognition of" and "refrain from revealing." *Webster's Third New International Dictionary* 469 (1966). Hence, by refraining from stating any identity at all, one conceals one's identity.

{10} As for Defendant's argument that there should have been no time limit on his response, we acknowledge that the statute does not contain a specific time limit. But the absence of a specific time limit suggests a conclusion opposite to what Defendant proposes. One could infer that concealment for any period of time, however short, violates the statute.

{11} A similar issue arose in *In re Suazo,* 117 N.M. 785, 877 P.2d 1088 (1994). Under New Mexico's Implied Consent Act, NMSA 1978, § 66-8-11 (1993), a driver's license can be revoked for one year if the licensee refuses to take a blood-alcohol test after being arrested for driving under the influence of alcohol. *See In re Suazo,* 117 N.M. at 786, 877 P.2d at 1089. Suazo contended that his license should not have been revoked because he eventually agreed to take the test, more than two hours after his initial refusal. *See id.* at 786-87, 877 P.2d at 1089-90. Our Supreme Court rejected his contention. It did not say that a later consent could never cure an initial rejection. But it placed strict limits on the power to rescind an initial refusal, permitting the driver to rescind only:

(1) when he does so before the elapse of the reasonable length of time it would take to understand the consequences of his refusal;

(2) when such a test would still be accurate;

(3) when testing equipment or facilities are still readily available;

(4) when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and

(5) when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

*Id.* at 793, 877 P.2d at 1096. The time allowed would "always be a very short time, never more than a matter of minutes." *Id.*

■ {12} In construing the concealing-identity statute, we find in *Suazo* support for a rule that permits one a few moments to consider the consequences of refusal to identify oneself. But that period would have to be brief. The purpose of Section 30–22–3 is "to provide police officers the minimal, essential information regarding identity so that they can perform their duties (not be 'hindered' in the 'legal performance of [their duties]')." *State v. Andrews,* 1997–NMCA–017, ¶ 6, 123 N.M. 95, 934 P.2d 289. Any delay in identifying oneself would "hinder" or "interrupt" law enforcement officers. Section 30–22–3. We hold that Section 30–22–3 requires a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any "substantial inconvenience or expense to the police." *Suazo,* 117 N.M. at 793, 877 P.2d at 1096. We address below Defendant's argument that he responded sufficiently promptly.

## SUFFICIENCY OF THE EVIDENCE

■ {13} Defendant argues that the evidence of guilt was deficient in three respects. He claims that the State failed to prove that (1) he concealed his identity, (2) he acted with the intent required by the statute, and (3) the officers were acting in the legal performance of their duties. On a challenge to the sufficiency of the evidence in a criminal case, we review the evidence to determine whether a rational fact finder could have been convinced beyond a reasonable doubt that the evidence established the elements of the offense. *See State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). We limit ourselves to those elements that Defendant claims to have been insufficiently proved.

■ {14} We can deal summarily with the first claim. The evidence showed that Defendant refused to provide any identification to Officer Fox, refused to answer several requests for identification by Sergeant Fowler before giving his last name, and provided his full name to Corporal Flint only after an initial refusal. In the previous section of this opinion we held that a person can conceal his identity by delaying disclosure for a sufficient period of time to cause substantial inconvenience or expense to law enforcement officers. The fact finder here could readily find that Defendant's delay in identifying himself caused substantial inconvenience to the UNM officers. The evidence is sufficient to prove that Defendant concealed his identity.

{15} As for his second claim, Defendant correctly points out that Section 30–22–3 requires an "intent to obstruct the due execution of the law or . . . to intimidate, hinder or interrupt" a public officer in the "legal performance of his duty." He insists that there was insufficient evidence from which the fact-finder could determine that he had this intent. He argues that he had a plausible explanation for not providing information, as he was trying to determine the authority of the officers to act.

■ {16} But Defendant was told by uniformed UNM police officers that the property belonged to UNM. Although Defendant appears to be arguing that he did not believe the officers' statements because they were unsupported by signs or a map, it was for the district court as fact-finder to decide whether Defendant was credible. The court was not required to credit Defendant's protestations that he honestly doubted the authority of the officers and had no intent to hinder the officers in the performance of their duties. *See State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) ("The fact finder may reject defendant's version of the incident."). We hold that there was substantial evidence to support a finding of the requisite intent.

■ {17} Defendant's third claim is that the UNM police officers were not acting "in

the legal performance of [their] dut[ies]." We assume that Section 30–22–3 applies only when the officers are in fact acting with lawful authority. Defendant asserts that UNM police officers are prohibited by NMSA 1978, Section 29–5–1.1(B) (1989) from enforcing traffic regulations in locations that are not marked with proper signs. Section 29–5–1.1(B) provides that "[a]reas subject to campus traffic regulations shall be marked with signs conforming with standards used by the state highway and transportation department." Nevertheless, the authority of campus officers is not limited to enforcement of such regulations. According to NMSA 1978, Section 29–5–2(B) (1975):

> University police officers have the powers of peace officers within the exterior boundaries of lands under control of the board of regents employing them, including public streets and highways within such boundaries. Within this territory, a university police officer may enforce all applicable laws, ordinances and campus traffic regulations, but no arrest for violation of any law, ordinance or campus traffic regulation relating to motor vehicles is valid unless, at the time of arrest, the university police officer is wearing:
>
> (1) a distinctive badge bearing the name of the institution issued to him by the board of regents; or
>
> (2) a distinctive uniform prescribed and issued to him by the board of regents.

As long as Defendant was parked "within the exterior boundaries" of the university, the officers possessed the powers of peace officers in dealing with him. Even if the absence of proper signage precluded the officers from enforcing UNM parking regulations on the vacant lot (a matter we need not resolve), they still had the authority to investigate the absence of a license plate on Defendant's vehicle. The evidence sufficed for the district court to find that the officers were acting in the legal performance of their duties.

*CONSTITUTIONAL ISSUES*

{18} Defendant raises three constitutional issues. He contends that (1) the prosecution violated his constitutional right to remain silent, (2) he was detained in violation of his rights, and (3) the concealing-identity statute is unconstitutionally vague. We address each issue in turn.

{19} Defendant rests his claim of a constitutional right to remain silent on the First Amendment to the United States Constitution, which generally applies to the states through the Fourteenth Amendment, *see Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (First Amendment right of access to criminal trials). He explicitly disclaims reliance on the Fourth or Fifth Amendments. The sole authority cited by Defendant in support of his First Amendment claim is *Fillmore v. Ordonez*, 829 F.Supp. 1544, 1556 (D.Kan.1993), *aff'd* 17 F.3d 1436 (10th Cir. 1994), which does not address the matter. *Fillmore* held only that the *Fifth* Amendment prevented the defendant from being arrested or prosecuted for failure to disclose whether his driving privileges had been revoked.

{20} In some circumstances the First Amendment may create a privilege not to disclose information. In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460–63, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the United States Supreme Court held that requiring the NAACP to provide its membership lists would infringe upon freedom of association protected by the Fourteenth Amendment. Perhaps compelled disclosures could also violate freedom of religion or freedom of the press in certain contexts. But Defendant has wholly failed to show a predicate for such a contention in this case. He appears to rely simply on a claim of a generalized right not to speak. There is no such right. We must reject his First Amendment argument. *See Albright v. Rodriguez*, 51 F.3d 1531, 1539 (10th Cir.1995) ("Plaintiff has not identified any case recognizing a First Amendment right to refuse to identify one's self to a police officer during a lawful investigative stop, nor has our research disclosed any.").

{21} Defendant's unlawful-detention claim is that the officers lacked probable cause to detain him for investigation. We assume that he bases this claim on the

Fourth Amendment, which applies to the states through the Fourteenth Amendment. *See State v. Munoz*, 1998–NMCA–140, ¶ 8, 125 N.M. 765, 965 P.2d 349. Defendant argues that had there been probable cause, the officers would have cited him for failure to have a license plate or a parking permit, which they did not do. But the officers did not need probable cause to question Defendant. Although probable cause is necessary for an arrest, police officers do not need probable cause to detain someone for investigation; they need only "reasonable suspicion that the law has been or is being violated." *State v. Flores*, 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. Perhaps the Fourth Amendment did not even require reasonable suspicion here, because it is not clear that the officers detained Defendant or restricted his movements in any way while seeking his identity. *Cf. Brown v. Texas*, 443 U.S. 47, 51–52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (officers did not have reasonable suspicion to detain defendant, so his conviction for refusing to identify himself must be overturned). We need not address that question, however. The absence of a license plate on Defendant's vehicle provided any reasonable suspicion (or even probable cause) that may have been required. It is irrelevant whether the officers ultimately charged Defendant with the offenses that they were originally investigating. *Cf.* 2 Wayne R. LaFave, *Search & Seizure* § 3.2(d) at 44 ("[H]indsight may not be employed in determining whether a prior search or arrest was made upon probable cause.").

■ {22} Defendant also challenges Section 30–22–3 as void for vagueness. A statute "must provide adequate warning to a person of ordinary intelligence that his conduct is prohibited." *State v. James M.*, 111 N.M. 473, 477, 806 P.2d 1063, 1067 (Ct.App. 1990). But "[a] statute is not void for vagueness if a reasonable and practical construction can be given to its language." *Id.* In *Andrews*, 1997–NMCA–017, ¶¶ 10–13, 123 N.M. 95, 934 P.2d 289, we rejected a contention that the word "identify" in Section 30–22–3 is unconstitutionally vague. Here, Defendant asserts that the statute is unconstitutionally vague because it does not provide a time limit within which one must disclose one's identity. We disagree. We have provided a "reasonable and practical" construction to the statute, requiring a prompt disclosure. To the extent that Defendant may believe that Section 30–22–3 is vague in other respects, he fails to elaborate on his challenge. Because we cannot discern what Defendant's other complaints may be, he has not adequately preserved them for review on appeal. *See State v. Padilla*, 88 N.M. 160, 162, 538 P.2d 802, 804 (Ct.App.1975) (refusing to consider issue when court cannot tell what appellant is arguing).

*JURISDICTION*

■ {23} Finally, Defendant asserts that he is challenging jurisdiction. A challenge to the subject matter jurisdiction of the district court may be raised at any time, including on appeal. *See State v. Begay*, 105 N.M. 498, 499, 734 P.2d 278, 279 (Ct.App. 1987). Defendant's argument, however, has nothing to do with the district court's jurisdiction. He complains only that the metropolitan court failed to order the State to respond to a pleading he filed entitled "Private Demand." The pleading demanded that the State disclose the source of the UNM officers' authority. Although Defendant suggests that the State's failure to answer the Private Demand deprived the court of jurisdiction, shortcomings in the discovery process do not affect jurisdiction. Perhaps Defendant could claim that he should have been provided with information essential to his defense. But he makes no claim that the State's failure to respond to the Private Demand impaired his ability to defend himself. We reject Defendant's challenge.

*CONCLUSION*

{24} We affirm the judgment and sentence of the district court.

{25} **IT IS SO ORDERED.**

APODACA and ARMIJO, JJ., concur.