This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **No. A-1-CA-34973**

**FELIX LAJEUNESSE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hadfield, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, New Mexico
Laura Erin Horton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**INTRODUCTION**

{1}     Defendant appeals his convictions for possession of burglary tools, conspiracy to commit possession of burglary tools, concealing identity and possession of drug paraphernalia, challenging the sufficiency of the evidence to convict him on each of the counts. After a review of the record, we conclude that sufficient evidence exists to support all but the possession of burglary tools and conspiracy to commit possession of burglary tools counts. We affirm Defendant's conviction on the tampering, concealing identity, and possession of drug paraphernalia counts, but reverse his possession of burglary tools and conspiracy to commit possession of burglary tools convictions and remand with instructions to vacate those convictions. As this is a memorandum opinion, we limit our recitation of the facts to those necessary to our decision.

**BACKGROUND**

{2}     In the summer of 2014, a passerby observed a car parked at the Finley Kidz Car and Dog Wash. Defendant exited the car and went into the dog wash portion of the business where he was seen trying to manipulate a coin-collection box used to operate the dog wash. After Defendant had been standing at the machine for several minutes, he was joined by a woman who had exited the same car. The woman returned to the car, retrieved what the passerby described as a metal tool, and brought it to Defendant.

Defendant took the tool and began using it to try to pry open the coin collection box. The passerby found this behavior suspicious and called the police.

{3} When the police arrived, they found Defendant near a bent car antenna and vise grip pliers. The officers discovered that three of the bolts on the coin collection box used to operate the dog wash showed signs of having been manipulated with the pliers. Defendant was placed under arrest. When asked for his name, birth date, and social security number, Defendant complied, but gave his name as Henry Lajeunesse. The officer searched for that name, but was unable to match any of the results with Defendant. The officer confronted Defendant with this discrepancy, at which point Defendant provided accurate information.

{4} After correctly identifying Defendant in his computer system, the officer arrested Defendant on an outstanding warrant. While conducting a search of Defendant's person, the officer discovered a syringe containing a brown liquid that he suspected was heroin. The officer handcuffed Defendant and placed the syringe a short distance away. While the officer's attention was elsewhere, Defendant moved over to the syringe and expelled the liquid onto the ground.

{5} Defendant was charged with possession of burglary tools, conspiracy to commit possession of burglary tools, two counts of tampering with evidence—one for emptying the syringe and one for placing the vice grips and antenna into a nearby

bin—concealing identity, and possession of drug paraphernalia. The case went to trial, and the jury found Defendant guilty of five of the charged offenses, finding him not guilty of tampering with regard to the burglary tools. The district court, however, entered judgment notwithstanding the verdict on the remaining tampering charge because it did not believe "it [was] possible for a jury to find beyond a reasonable doubt that the substance in the syringe was, in fact, heroin." Defendant appeals his convictions.

**DISCUSSION**

{6}     Defendant challenges the sufficiency of the evidence supporting each of his convictions. He also asserts that his conviction for both possession of burglary tools and conspiracy to possess burglary tools violates double jeopardy.

**A.     Sufficiency of the Evidence**

{7}     When reviewing for sufficiency, "we review the evidence to determine whether a rational fact[-]finder could have been convinced beyond a reasonable doubt that the evidence established the elements of the offense." *State v. Dawson*, 1999-NMCA-072, ¶ 13, 127 N.M. 472, 983 P.2d 421; *see also State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (stating the rule that appellate court reviewing for sufficiency must "view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether *any* rational trier

4

of fact could have found the essential elements of the crime beyond a reasonable doubt")(internal quotation marks and citation omitted)); *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (defining reasonable inference as "conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence" (alteration, internal quotation marks and citation omitted)). In making this determination, we must "distinguish between conclusions based on speculation and those based on inferences," as a jury's decision must be supported by evidence in the record rather than mere guess or conjecture. *Id.* "[E]ven when a permissible logical inference may be drawn from the facts, if it must be buttressed by surmise and conjecture in order to convict, the conviction cannot stand." *Id.* (internal quotation marks and citation omitted).

**1.     Concealing Identity**

{8}     We begin by addressing Defendant's argument that the State did not provide sufficient evidence of intent with regard to his concealing identity conviction. On that count, the State was required to prove beyond a reasonable doubt that Defendant "concealed his true name or identity, or disguised himself," and in doing so, he "intended to intimidate, hinder or interrupt a public officer in the legal performance of his duties[.]" It is a petty misdemeanor to conceal one's identity. *See* NMSA 1978 §30-22-3 (1963). The purpose of the statute is "to provide police officers the minimal,

essential information regarding identity so that they can perform their duties." *State v. Andrews*, 1997-NMCA-017, ¶ 7, 123 N.M. 95, 934 P.2d 289 (characterizing failure to provide the information contained in a driver's license as a potential violation of concealing identity statute "regardless of whether a driver also provides his or her true name"). "Any delay in identifying oneself would hinder or interrupt law enforcement officers." *Dawson*, 1999-NMCA-072, ¶ 12 (internal quotation marks omitted) (stating that Section 30-22-3 "requires a person to furnish identifying information immediately upon request or . . . so soon thereafter as not to cause any substantial inconvenience or expense to the police" (internal quotation marks and citation omitted)).

**{9}** Defendant told the officer his first name was Henry, but the officer was unable to identify Defendant in the computer system using the name Defendant gave him. Notwithstanding the fact that Defendant eventually gave his "correct" information, the jury could reasonably conclude that Defendant concealed his name. Our caselaw is clear that *any* delay in identifying oneself hinders law enforcement. *See Dawson*, 1999-NMCA-072, ¶ 12. Defendant's decision to later provide the correct information does not cure his initial failure to do so. The jury could therefore properly conclude that, because Defendant gave a name that caused delay in the officer's identification, Defendant intended to hinder that investigation. *See Andrews*, 1997-NMCA-017, ¶ 9,

6

(allowing inference that the defendant was uncooperative in giving his identifying information to the police "in the hope that the officers would not discover he was driving with a revoked license"); *see also State v. Guerra*, 2012-NMSC-027, ¶¶ 12-13, 284 P.3d 1076 (stating, "intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence" and explaining that jury can properly infer intent to disrupt police investigation from a defendant's overt act)(alteration, internal quotation marks, and citation omitted)); *State v. Castañeda*, 2001-NMCA-052, ¶ 21, 130 N.M. 679, 30 P.3d 368 ("Since the element of intent involves the state of mind of the defendant it is seldom, if ever, susceptible to direct proof, and may be proved by circumstantial evidence." (internal quotation marks and citation omitted)). Viewing the evidence in the light most favorable to the verdict and indulging only those inferences that support the verdict, we hold that sufficient circumstantial evidence of Defendant's intent existed to support his conviction for concealing identity.

{10}	Defendant argues that because he gave his birthday and social security number, the jury could not properly infer an intent to hinder law enforcement. We disagree. The record is unclear whether the date of birth and social security number that Defendant initially provided were accurate. Further, we note the importance of the disjunctive used in the statute, requiring concealment of a "true name *or* identity."

Section 30-22-3; *cf. Andrews*, 1997-NMCA-017, ¶ 7 (acknowledging that failure to provide other identifying information can constitute concealing identity "regardless of whether a driver also provides his or her true name"). The evidence is sufficient to support the jury's conclusion that Defendant concealed his identity.

**2.      Burglary Tools**

{11}      To find Defendant guilty of possession of burglary tools, the jury was asked to determine whether the State proved beyond a reasonable doubt that "[D]efendant had in his possession vice grips and a partially bent vehicle antenna" and that "[D]efendant intended that these vice grips and a partially bent vehicle antenna be used for the purpose of committing a burglary[.]" Defendant argues that the State failed to prove that he intended to commit a burglary because it did not provide evidence that he intended to use the tools to make an "unauthorized entry of a structure." Specifically, he argues that the coin collection box is not a structure and therefore breaking into it would not constitute a burglary. *See* NMSA 1978 § 30-16-3 (1971) (defining burglary as "the unauthorized entry of any . . . dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein"). Defendant presents the same argument—that the coin collection box was not a structure for purposes of burglary—to argue that the State presented insufficient evidence of conspiracy to commit possession of burglary tools. Defendant does not challenge the

8

sufficiency of any other element of his conviction for conspiracy to commit possession of burglary tools. We begin by determining whether the coin collection box constitutes a "structure" under our burglary jurisprudence.

**{12}** Our analysis of whether the coin collection box satisfies the definition of a "structure" in the context of burglary is guided by our Supreme Court's opinion in *State v. Office of Public Defender ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622. Not only does *Muqqddin* provide a comprehensive review of the burglary statute's structure, history, and policies, the circumstances of this case are akin to those of *Muqqddin. See id.* ¶¶ 15-32. In *Muqqddin*, the defendant punctured the gas tank of a van with a nail or piece of metal and drained the gas into a gas can. *Id.* ¶ 5. The defendant was charged with auto burglary and possession of burglary tools. *Id.* ¶ 6. Noting that "our Legislature did not include *parts* of the enumerated items that could be burglarized." *Id.* ¶ 37 (emphasis added) (internal quotation marks omitted), our Supreme Court concluded that the "penetration of [the] vehicle's perimeter [did not] constitute[] a penetration of the vehicle itself[,]" and could not serve as the basis for a burglary charge. *Id* ¶ 46.

**{13}** In reaching its conclusion in *Muqqddin* , our Supreme Court noted, "[b]urglary has a greater purpose than merely protecting property." *Id.* ¶ 39. "The gravamen of the offense of burglary has always been the unauthorized entry with felonious intent." *Id.*

9

¶ 41. Indeed, "[t]he privacy interest that our modern burglary statute . . . aim[s] to protect [is that] against the feeling of violation and vulnerability that occurs when a burglar invades one's personal space." *Id.* ¶ 43. "It is this entry or invasion that is the harm created by the act of burglary and that the statute punishes, as the crime of burglary is complete when there is an unauthorized entry with the requisite intent." *Id.*¶ 41 (alteration, internal quotation marks, and citation omitted).

{14}    In this case, while the coin collection box was affixed to the side of the commercial structure flush with the outer wall of the building, any attempt by Defendant to gain entry to the collection box was nothing more than an attempt to gain access to an extremely limited *part* of the structure, similar to the *Muqqddin* defendant's attempt to gain access to the gas tank. Defendant's actions did not implicate "[t]he privacy interest that our modern burglary statute . . . aim[s] to protect[,]" specifically, the interest "against the feeling of violation and vulnerability that occurs when a burglar invades one's personal space." *Id.* ¶ 43. Even had Defendant been successful in accessing the coin collection box, he would not have had access to the interior of the structure, and Defendant's actions do not give rise to the same kind of personal violation of an intruder entering a home, office, business, or vehicle and searching the belongings inside. *See id.*¶ 43 (noting difference between siphoning gas and entering structure or vehicle). We therefore conclude that

Defendant's attempt to penetrate the structure's perimeter by trying to pry open the coin collection box was not a penetration of the car and dog wash structure itself and cannot serve as the basis for a burglary charge. *See id.* ¶ 46. In light of our holding, the charges against Defendant for possession of burglary tools and conspiracy to possess burglary tools cannot stand. Because we reverse the district court on the possession of burglary tools and conspiracy to possess burglary tools, we need not address Defendant's claim that his conviction for these two charges constitute double jeopardy.

### 3.     Possession of Paraphernalia

{15}     The jury found Defendant guilty of possession of drug paraphernalia, meaning the jury found that the State proved, beyond a reasonable doubt, that Defendant (1) had a syringe in his possession, and (2) intended that the syringe be used to "inject, ingest, inhale, or otherwise introduce into the human body, a controlled substance [that] is regulated or prohibited by law." Defendant argues the State proffered insufficient evidence to support his conviction. Specifically, Defendant's argument focuses on the nature of the substance in the syringe. He asserts fault in the State's failure to present evidence regarding the use of the syringe through "instructions, descriptive materials, [or] expert testimony," and decries the lack of testing to positively identify the brown liquid as a controlled substance. Defendant's argument

11

in this regard ignores the intent requirement in the second element. It is not the illegal nature of whatever substance was in the syringe that must be proven, but rather the intent to use the syringe in a prohibited manner. By shifting the focus of this conviction from the intent to the substance, Defendant ignores the proper focus of the second element. Our inquiry is whether there was sufficient evidence from which the jury could infer that Defendant possessed the syringe intending that it be used to introduce a controlled substance into the human body, not that the syringe actually contained a controlled substance.

{16}     Intent is rarely proven through direct evidence. *Castañeda*, 2001-NMCA-052, ¶ 21. It may, however, be proven through circumstantial evidence, and juries may infer intent from a defendant's overt act. *See Guerra*, 2012-NMSC-027, ¶ 12 (pointing out that jury may not speculate that overt act took place in order to reach inference). The evidence establishes that Defendant had the syringe in his possession. The presence of a liquid in that syringe gives rise to a reasonable inference that Defendant intended that the substance be somehow introduced into the body. Had the substance been held in a vial or some other container, such an inference might not have been reasonable. There is also evidence that Defendant overtly dispelled the substance in the syringe onto the sidewalk after being handcuffed and identified himself to the officer in a misleading manner. The jury could reasonably interpret these actions as

12

evincing a consciousness of guilt on Defendant's part and could infer that the syringe contained a controlled substance. We therefore conclude that the evidence, taken together, is sufficient to support Defendant's conviction for possession of paraphernalia.

{17}     We acknowledge that the district court entered a judgment notwithstanding the verdict as to the tampering verdict because, although the arresting officer stated that the substance in the syringe appeared to be heroin, he never gave a positive identification of the substance. As the district court put it, "[i]t was never tested. There was no testimony of what the substance was. . . . he never said it was heroin, because he doesn't know if it was heroin or not." Defendant argues the district court's order in this regard is "a specific finding that 'no reasonable juror could have found that the substance contained within the syringe at issue was a controlled substance[.]' " Defendant's argument on this point misunderstands the element that the State was required to prove as to the possession charge. The focus of the second element is not whether the substance in the syringe was a controlled substance, but whether Defendant intended to use the syringe to introduce a controlled substance into the human body. While the district court's judgment could be relevant to the former issue, it is not relevant to the latter issue, with which we are concerned here. We have not been asked to, and do not intend to determine the propriety of the district court's

13

decision to enter judgment notwithstanding the verdict as to the tampering count. Thus, the district court's statements and decision as to the adequacy of proof regarding tampering charge and verdict does not affect our decision here.

**CONCLUSION**

{18}    We conclude that sufficient evidence existed to support Defendant's convictions for concealing identity and possession of drug paraphernalia. We reverse Defendant's convictions for possession of burglary tools and conspiracy to possess burglary tools and remand to the district court with instructions to vacate those convictions.

{19}    **IT IS SO ORDERED.**


_____
**JULIE J. VARGAS, Judge**

**WE CONCUR:**


_____
**HENRY M. BOHNHOFF, Judge**


_____
**EMIL J. KIEHNE, Judge**