This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS FOR THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **No. A-1-CA-35054**

**ELIZABETH MORENO, a.k.a.**
**ELIZABETH PARTAIN;**
**ELIZABETH PARTAIN-SANCHEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hadfield, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}    The memorandum opinion filed September 4, 2018, is hereby withdrawn and this opinion is filed in its stead. In this appeal we are called upon to examine the contours of New Mexico's concealing identity statute, pursuant to NMSA 1978, Section 30-22-3 (1963). After a jury trial, Defendant was convicted of battery upon a peace officer and concealing identity. Defendant appeals her conviction for concealing identity. Defendant makes six arguments on appeal: (1) there was insufficient evidence to convict Defendant of concealing identity; (2) concealing identity may not be predicated upon Defendant's right to remain silent; (3) instructional error; and (4) evidentiary error. We find there was insufficient evidence to support Officer Audi Miranda's demand for Defendant's identification absent reasonable suspicion of criminal activity and insufficient evidence of Defendant's specific intent to interrupt a public officer in the legal performance of his duty, we reverse her conviction for concealing identity. As a result, we need not address Defendant's remaining arguments.

**BACKGROUND**

{2}    The parties agree that the material facts are not in dispute. On New Year's Eve 2013, Pueblo of Sandia police Officer Miranda was called to investigate a disturbance at the main entrance of the Sandia Casino. Officer Miranda turned on his lapel camera. Defendant introduced herself to Officer Miranda, stating, "Hi, I'm Elizabeth Moreno," shook his hand and asked, "How are you?" Officer

2

Miranda responded, "Hi Elizabeth, what's going on?" Officer Miranda and another officer advised Defendant of their investigation. Because casino policy requires guests to show identification to casino staff members, and Defendant refused to do so, Defendant was asked to leave the premises. Nevertheless, the officers continued to discuss the disturbance with Defendant. It is clear that Defendant was impaired. As Defendant continued to speak with the officers, but before Defendant was ever asked for her identification by either of the police officers, she searched her purse for her identification to provide to the officers. Due to her impairment, the officers failed to comprehend her words, and asked to see her "ID." Defendant responded, "give me a second" and attempted an incoherent explanation of the disturbance. Another officer advised Defendant that her explanation did not matter because the casino did not want her inside, so she would have to leave. In response to the directive to leave, Defendant attempted another explanation of the disturbance. Simultaneously, Officer Miranda asked for Defendant's "ID" as another officer told her she needed to leave. After another attempt by Defendant to explain herself, Officer Miranda requested her "ID" then her "identification." In response to Defendant's statement of "no," both officers instructed, "then you need to leave." One of the officers advised Defendant, "we're not going to play this game all night, you want to go to jail?" However, he then offered to call Defendant

3

a cab. At this point, Defendant complied with the officer's directive, and she turned and left towards the casino exit.

{3} As Defendant was walking away, the officers discussed arresting her for disorderly conduct, but decided to "give her a chance to walk out of [t]here." Out of concern for her safety, the officers decided to follow her to "give her a ride." Seeing Defendant walk in the middle of the road, Officer Miranda decided to take enforcement action and seized Defendant by grabbing her arm. Officer Miranda then handcuffed Defendant and performed a pat-down for weapons. The officers located an item from Defendant's bag containing her name. When asked for her birthdate Defendant provided the accurate date; when asked if she had a New Mexico license, she accurately stated she was from Texas.

**DISCUSSION**

{4} "On a challenge to the sufficiency of the evidence in a criminal case, we review the evidence to determine whether a rational fact[-]finder could have been convinced beyond a reasonable doubt that the evidence established the elements of the offense." *State v. Dawson*, 1999-NMCA-072, ¶ 13, 127 N.M. 472, 983 P.2d 421. We review the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). Where, as is the case

4

here, "an issue to be determined rests upon the interpretation of documentary evidence, an appellate court is in as good a position as the trial court to determine the facts and draw its own conclusions." *Maestas v. Martinez*, 1988-NMCA-020, ¶ 15, 107 N.M. 91, 752 P.2d 1107; *see State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186 (including video evidence within the ambit of this principle). Concealing identity requires "proof of three elements: (1) the defendant concealed [her true] name or identity[;] (2) with intent to obstruct, hinder, interrupt, or intimidate[;] (3) any public officer or person acting in [the] legal performance of his duty." *State v. Ortiz*, 2017-NMCA-006, ¶ 10, 387 P.3d 323; *see also* § 30-22-3.

{5} Defendant argues that when she approached Officer Miranda she voluntarily identified herself by giving her true full name and shaking the officer's hand. This is evidenced by the fact that Officer Miranda referred to Defendant by her first name throughout the incident. Although the officers did request Defendant's identification, the request was coupled with the option of leaving the casino. Defendant chose to leave. We are not convinced that Defendant was required to disclose any further identification as it is not clear that the officers detained Defendant or restricted her movements in any way when they first approached her inside the casino and sought some form of identification from her. *See Dawson*, 1999-NMCA-072, ¶ 21 (noting the requirement of detention or restriction of movement while seeking identity). Absent a detention, Defendant's compliance

5

with a request for identification is not implicated under Section 30-22-3. We therefore conclude that Defendant did not conceal her identity before voluntarily leaving the casino.

{6} We next review whether Officer Miranda, while acting in the legal performance of his lawful duty, possessed reasonable suspicion to follow Defendant into the parking area and to seize her. We consider our decision in *Ortiz*. "An officer detaining a suspect for the purpose of requiring [her] to identify [herself], has conducted a seizure subject to the requirements of the Fourth Amendment." *Ortiz*, 2017-NMCA-006, ¶ 12 (citing *Brown v. Texas*, 443 U.S. 47, 50-52 (1979)). "Reasonable suspicion must exist at the inception of the stop and cannot be based on facts that arise as a result of the encounter." *Ortiz*, 2017-NMCA-006, ¶ 13 (internal quotation marks and citation omitted). Defendant argues that at the time the officers decided to follow her out of the casino, having complied with their request to leave, they were no longer acting in an investigative capacity and were without reasonable suspicion. We therefore agree with Defendant "that if the [s]tate failed to produce evidence that Officer [Miranda] had reasonable suspicion to detain Defendant, [his] seizure of Defendant was unlawful." *Id.* ¶ 12.

{7} Initially, we note that, once Defendant complied with Officer Miranda's instructions to leave, any reasonable suspicion he may have had while in the casino

6

dissipated. *See State v. Figueroa*, 2010-NMCA-048, ¶ 26, 148 N.M. 811, 242 P.3d 378 (recognizing that an officer terminating an investigation and telling a defendant that he was free to leave "constitute[s] a recognition that [the officer's] suspicion about [the d]efendant's involvement in the [suspected criminal activity has] been dispelled, and it end[s the officer's] authority to detain [the d]efendant or to investigate further"). Here, Officer Miranda admitted that he followed Defendant out of the casino, not based on any articulable reasonable suspicion to believe that criminal activity occurred or was occurring, *State v. Ochoa*, 2008-NMSC-023, ¶ 15, 143 N.M. 749, 182 P.3d 130, but rather out of his stated concern for her safety and to offer her a ride. This concern implicates the community caretaker exception to the Fourth Amendment, which arose from an "understanding that police officers frequently interact with citizens without an investigative purpose." *State v. Byrom*, 2018-NMCA-016, ¶ 10, 412 P.3d. 1109. This "caretaking function is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* (internal quotation marks and citation omitted). As such, Officer Miranda's concern for Defendant's safety or to secure her a ride necessarily cannot serve as the basis for reasonable suspicion of criminal activity.

**{8}** "[A]s a matter of law, a person is seized when the facts show accosting and restraint such that a reasonable person would believe he or she is not free to leave."

7

*State v. Jason L.*, 2000-NMSC-018, ¶ 19, 129 N.M. 119, 2 P.3d 856 (alteration, internal quotation marks, and citation omitted). Without reasonable suspicion, an officer has no legal authority to detain an individual for questioning. *Ortiz*, 2017-NMCA-006, ¶ 12. In *Jason L.*, our Supreme Court, in reversing the Court of Appeals and affirming the district court's suppression of a handgun, held that "[r]easonable suspicion must exist at the inception of the seizure" and "[t]he officer cannot rely on facts which arise as a result of the encounter." 2000-NMSC-018, ¶ 20. An officer must have a reasonable suspicion "that the law has been or is being violated" and that "[r]easonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038.

{9}     A seizure occurred when Officer Miranda grabbed Defendant by the arm in the parking area, restraining her freedom of motion. Officer Miranda then handcuffed Defendant, a clear signal to any reasonable person that they are no longer free to leave. For this seizure to be legal, Officer Miranda must have been able to draw rational inferences from specific articulable facts that the law has been or is being broken.

{10}     Under our analysis there was not sufficient evidence at trial to support the conclusion that Officer Miranda had reasonable suspicion to seize Defendant in the parking area while acting in the legal performance of his duty. At trial, Officer

8

Miranda testified to his belief that, "[a]ny time we make contact with somebody that we're either going to take some action on or we have some kind of reasonable suspicion, of anything that's going on, we can ask for ID . . . or just . . . for documentation." Yet Officer Miranda offered no specific articulable facts that Defendant had broken or was breaking the law after he allowed her to leave the casino. Indeed, the officers' stated concerns were based on community caretaking, rather than reasonable suspicion.

{11}    At the time Officer Miranda took "enforcement action" and seized Defendant, he again asked her if she had an ID. Defendant responded, "No." In response to further questions by the officers and an offer to call someone for a ride, Defendant responded, "[b]ecause I'm stupid and I'm dumb." In reaffirming that "New Mexico has not dispensed with the requirement of individualized, particularized suspicion," our Supreme Court noted that, "[s]ince [the d]efendant was seized prior to the search of [Child], the fruits of that search are not relevant to the determination of whether there was reasonable and articulable suspicion to support the seizure of [the d]efendant." *Jason L.*, 2000-NMSC-018, ¶¶ 20-21 (alteration, internal quotation marks, and citation omitted). Here, Officer Miranda's lack of reasonable suspicion that Defendant was engaged in criminal activity prior to her seizure cannot be cured by the fruits of her response—her refusal to identify herself.

**CONCLUSION**

{12}    Because the State failed to prove beyond a reasonable doubt that Officer Miranda possessed reasonable suspicion to follow Defendant to the parking area and seize her, we conclude that he was not acting in the legal performance of his duty and there was, therefore, insufficient evidence of the elements of the crime. We reverse Defendant's conviction for concealing identity.

{13}    **IT IS SO ORDERED.**


_____
**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**JULIE J. VARGAS, Judge**