**Certiorari Denied, November 14, 2016, No. S-1-SC-36150**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-006**

**Filing Date: September 19, 2016**

**Docket No. 34,017**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**OMAR ORTIZ,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**KENNEDY, Judge.**

## I.    INTRODUCTION

**{1}** Defendant was charged with concealing his identity and attempting to disarm a peace officer. The district court convicted him of both charges in a bench trial. Defendant appeals,

1

arguing that the evidence produced at trial was insufficient to support a guilty verdict beyond a reasonable doubt with respect to each element of each charge. We conclude that the evidence was sufficient to support Defendant's convictions, and we affirm.

## II.    BACKGROUND

{2}    Officer Standridge was dispatched to the Grand Motor Inn in Deming, New Mexico at approximately 6:00 a.m. When she arrived on the scene, she observed Defendant "jumping back and forth over the fence" of a nearby auto center. She testified that such behavior was "pretty suspicious in the area for that hour of the day." She approached Defendant and informed him that she was investigating reports of a male subject acting suspiciously. She then asked for Defendant's name and identification, which Defendant declined to give. Officer Standridge conducted a pat-down of Defendant, during which she discovered a temporary paper ID card issued by the state of New Mexico in his pocket.[1] Throughout Officer Standridge's encounter with Defendant, his behavior was "bizarre," and he kept trying to pull away from her. Officer Standridge then placed Defendant in the back of her patrol car and took him to the Deming Police Department.

{3}    Officer Robert Chavez came into contact with Defendant at the Deming Police Department when Defendant began hitting his head against the wall and door of the holding cell. Defendant did not heed orders to stop this behavior, and he eventually developed a large, bleeding lump on his head. When several officers entered the holding cell to prevent him from causing any more injury to himself, Defendant became aggressive toward the officers, and he was subdued only after he was tasered and restrained by multiple officers.

{4}    Officer Chavez, accompanied by an officer trainee, then took Defendant to the hospital to address Defendant's injuries. Defendant was transported in the back seat of Officer Chavez's patrol car with his hands handcuffed behind his back. The clear partition separating the front seat from the back seat was open to allow air to flow from the front seat to the back seat. Officer Chavez's shotgun lock had been removed after causing an electrical fire in his patrol car. Officer Chavez had his shotgun, which was not locked in place, propped up against the seat so that the barrel of the shotgun was visible and accessible to Defendant in the back seat through the partition.

{5}    When they arrived at the hospital, the officer in training exited the patrol car and went to remove Defendant from the back seat. The officer in training yelled out to Officer Chavez stating, "he has your gun!" At that point, Officer Chavez exited the car. He observed Defendant grasping the barrel of Officer Chavez's shotgun through the open partition with both hands—while both hands were still handcuffed behind Defendant's back—and attempting to pull it through the partition. The officers struggled with Defendant, ultimately removing the gun from his hands, extracting him from the car, and taking him into the

---

[1]Defendant does not contest the validity of this pat-down.

hospital.

**{6}** Defendant was charged with concealing identity contrary to NMSA 1978, Section 30-22-3 (1963),[2] as well as attempting to commit the felony of disarming a peace officer contrary to NMSA 1978, Section 30-22-27(A)(1) (1997) and NMSA 1978, Section 30-28-1 (1963). The district court held a bench trial on August 2, 2013. At the close of the State's case, Defendant moved for a directed verdict on the grounds that the State did not proffer evidence sufficient to sustain a conviction for attempting to disarm a peace officer. In response, the State acknowledged that Section 30-22-27(A)(1) was inapplicable, but maintained that the evidence was sufficient to sustain a conviction under Section 30-22-27(A)(2). Later in this opinion we discuss the difference between these two sections.

**{7}** Noting that it was clear that Officer Chavez was acting in the scope of his duties and that the shotgun was intended for Officer Chavez's use, the district court found that Defendant was "going after" the shotgun through the open partition. Accordingly, the district court denied Defendant's motion for directed verdict. Defendant then testified on his own behalf. During his testimony, Defendant admitted that he was under the influence of alcohol and methamphetamine when he encountered Officers Standridge and Chavez. Defendant nonetheless claimed that he remembered giving Officer Standridge his name and informing Officer Standridge that he had only a temporary paper copy of his identification. Defendant also claimed that he never requested to be taken to the hospital and that he never wanted to be transported to the hospital. Because of this reluctance to go to the hospital, Defendant claimed that he grabbed on to anything that he could reach in order to try and prevent the officers from removing him from the patrol car. Defendant insisted that he was not trying to use the shotgun against anyone and insinuated that at the time of the incident, he was not actually aware that what he was grabbing on to was a shotgun.

**{8}** During closing arguments, both parties argued the merits of the concealing identity charge as well as whether the evidence proffered was sufficient to sustain a conviction under Section 30-22-27(A)(2). The parties argued for two opposing sets of facts. The State argued that Defendant gave no identification and intended to grab the shotgun thereby depriving Officer Chavez of its use. Defendant insisted that he gave his identification when asked and that he did not have the requisite intent to deprive Officer Chavez of the use of the shotgun when he grabbed it. The district court acknowledged the conflicting evidence. It discounted Defendant's testimony due to his intoxication and found Defendant guilty of concealing his identity. With regard to the attempt to disarm a police officer charge, the district court noted that it was appalled by the fact that Defendant was transported in a unit in which the partition

---

[2]Defendant was also charged with receiving or transferring stolen motor vehicles contrary to NMSA 1978, Section 30-16D-4(A) (2009) and failure to give immediate notice of accident contrary to NMSA 1978, Section 66-7-206 (1991). Those charges, however, were resolved through Defendant's guilty plea, arise from completely separate facts than those listed above, and are not at issue in this appeal.

was open and the shotgun was unsecured and acknowledged that once Defendant laid hands on the shotgun, "that changed the picture entirely." The district court held that, whether Defendant availed himself of the opportunity to grab the gun in order to prevent removal from the car or for other reasons, the State proved beyond a reasonable doubt that Defendant attempted to remove the shotgun from its place in the front seat, thereby depriving Officer Chavez of its use. Thus, the district court found Defendant guilty of attempting to disarm a police officer under Section 30-22-27(A)(2). Defendant appealed.

## III.    DISCUSSION

### A.    Standard of Review

**{9}**    On appeal, Defendant challenges the sufficiency of evidence in support of his convictions. Whether evidence is sufficient to support a verdict requires an inquiry into whether direct or circumstantial evidence exists "to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Smith*, 2016-NMSC-007, ¶ 19, 367 P.3d 420 (internal quotation marks and citation omitted).

### B.    Concealing Identity

**{10}**    Defendant was convicted of concealing his identity contrary to Section 30-22-3. Section 30-22-3 requires proof of three elements: (1) the defendant concealed his name or identity, (2) with intent to obstruct, hinder, interrupt, or intimidate, (3) any public officer or person acting in legal performance of his duty.

### 1.    Officer Standridge's Legal Performance of Duty

**{11}**    Defendant argues on appeal that we must look to whether Officer Standridge had reasonable suspicion that Defendant had committed or was about to commit a crime in order to determine whether sufficient evidence establishes that Officer Standridge was engaged in "a legal performance of [her] duty." Section 30-22-3. The State suggests that Defendant's argument in this regard actually raises an unpreserved Fourth Amendment issue that we should not address on appeal.

**{12}**    An officer detaining a suspect for the purpose of requiring him to identify himself, has conducted a seizure subject to the requirements of the Fourth Amendment. *Brown v. Texas*, 443 U.S. 47, 50-52 (1979) ("In the absence of any basis for suspecting [the defendant] of misconduct, the balance between the public interest and [the defendant]'s right to personal security and privacy tilts in favor of freedom from police interference."). Without reasonable suspicion, the officer would have no legal authority to detain the defendant for questioning.

*See State v. Gutierrez*, 2007-NMSC-033, ¶ 29, 142 N.M. 1, 162 P.3d 156 (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983) (plurality opinion)); *see also State v. Dawson*, 1999-NMCA-072, ¶ 21, 127 N.M. 472, 983 P.2d 421 (concluding that unless there is reasonable suspicion to believe the defendant was involved in criminal activity, it violates the Fourth Amendment to require the defendant to produce identification). We therefore agree with Defendant that if the State failed to produce evidence that Officer Standridge had reasonable suspicion to detain Defendant, her seizure of Defendant was unlawful and the State failed to prove that Officer Standridge was a public officer in a legal performance of her duty.[3]

**{13}** We review questions of reasonable suspicion de novo. *State v. Neal*, 2007-NMSC-043, ¶ 19, 142 N.M. 176, 164 P.3d 57. "Reasonable suspicion must exist at the inception of the stop and cannot be based on facts that arise as a result of the encounter." *State v. Akers*, 2010-NMCA-103, ¶ 38, 149 N.M. 53, 243 P.3d 757. Reasonable suspicion exists where an officer can point to specific articulable facts, together with rational inferences from those facts "that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Ochoa*, 2008-NMSC-023, ¶ 15, 143 N.M. 749, 182 P.3d 130 (internal quotation marks and citation omitted). While reasonable suspicion can arise from "wholly lawful conduct[,]" it may not be based on "unsupported intuition and inarticulate hunches." *State v. Harbison*, 2007-NMSC-016, ¶ 15, 141 N.M. 392, 156 P.3d 30 (alteration, internal quotation marks, and citation omitted). Thus, we look not to "whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* (internal quotation marks and citation omitted).

**{14}** For purposes of our reasonable suspicion analysis, we take into consideration only the facts in evidence leading up to the moment that Officer Standridge asked Defendant for identification. *See Akers*, 2010-NMCA-103, ¶ 38. Thus, our reasonable suspicion analysis is premised solely on Officer Standridge's information regarding the area, the time of day, and Defendant's behavior. Officer Standridge was dispatched to investigate a report of an adult male acting suspiciously. Once in the area, she observed Defendant "jumping back and forth" over the fence of a business establishment in the early hours of the morning. Defendant's behavior was odd in light of the time of day and location.

**{15}** Defendant calls attention to the lack of evidence that Defendant matched the description of the individual who was acting suspiciously and asserts that a report of

---

[3]This is different from the analysis commonly used when applying the statutes prohibiting battery of a police officer and resisting arrest. *See, e.g.*, *State v. Doe*, 1978-NMSC-072, ¶ 14, 92 N.M. 100, 583 P.2d 464 ("An arrest undertaken without probable cause does not vitiate all the authority of the arresting officer."). Those statutes, however, differ from the statute at issue in this case because they further different purposes. The statute at issue in this case does not necessarily involve the possible risk of physical harm to an officer, while the battery of a police officer and resisting arrest statutes are specifically aimed at discouraging physical harm to officers during physical encounters with suspects.

suspicious activity alone is not enough to amount to a suspicion that a crime has occurred. Irrespective of the description in the dispatch, upon arrival Officer Standridge observed an adult male acting suspiciously. It was reasonable for Officer Standridge to have stopped the only person that she saw acting suspiciously by repeatedly jumping the fence of a private property in the vicinity of a recent report of suspicious activity. This occurred at an hour when it is objectively reasonable to infer there were no other individuals present and that the business was not open. We agree with the State that Defendant's conduct could reasonably give rise to the belief that Defendant was engaged in criminal activity, such as trespass or breaking and entering. The content of the dispatch is a red herring given Officer Standridge's observations at the scene. We conclude that Officer Standridge had a reasonable suspicion to conduct a brief investigatory stop of Defendant. We also conclude that the State presented sufficient evidence that Officer Standridge was acting in the legal performance of her duty as a police officer in stopping Defendant.

## 2.    Defendant Concealed his Identity

**{16}**    Defendant suggests that any failure to give Officer Standridge his identification information was merely a hesitation that is permitted by *Dawson*, 1999-NMCA-072, ¶ 12. *Dawson* looked at the plain language of the statute and determined that rather than require concealment through the giving of a false name, Section 30-22-3 also prohibits withholding one's identity "by refraining from stating any identity at all." *Dawson*, 1999-NMCA-072, ¶ 9. Looking to case law applying time limits to the withholding of information under the Implied Consent Act, this Court crafted a rule that allows "a few moments to consider the consequences of refusal to identify oneself." *Id.* ¶ 12. We held that Section 30-22-3 "requires a person to furnish identifying information immediately upon request or, if the person has *reasonable* concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.' " *Dawson*, 1999-NMCA-072, ¶ 12 (emphasis added) (quoting *In re Suazo*, 1994-NMSC-070, ¶ 20, 117 N.M. 785, 877 P.2d 1088). In *Dawson,* evidence of the defendant's repeated refusal to provide identification was sufficient to amount to concealment under Section 30-22-3 because additional officers were called to the scene, resulting in substantial inconvenience. *Dawson*, 1999-NMCA-072, ¶ 14.

**{17}**    There is no evidence in the record to support Defendant's "hesitation" argument. Defendant characterizes Officer Standridge's request for identification as "dubious," "vague," and "open-ended," suggesting that Defendant's hesitation was therefore reasonable under the circumstances; assertions also unsupported in the record. Defendant testified that he gave the officer his identification immediately upon request. He never suggested that he hesitated, nor did he suggest that he was confused, apprehensive, or suspicious. Officer Standridge never suggested in her testimony that Defendant's actions were a hesitation or delay, but instead characterized them as an outright refusal. Defendant never affirmatively or voluntarily supplied his identification; rather, Officer Standridge discovered it during a pat-down of Defendant's person. Because we are not faced with a situation analogous to *Dawson*, that analysis of whether the police faced "substantial inconvenience or expense" is inapplicable. *Id.* ¶ 12 (internal quotation marks and citation omitted).

6

**{18}** Defendant points to his own testimony at trial, during which he claimed to have given Officer Standridge his name and temporary paper ID, as evidence that he did not conceal his identity. It is within the district court's purview, when acting as fact-finder, to weigh the credibility of witnesses and, in doing so, discard Defendant's version of events. *See, e.g.*, *Sutphin*, 1988-NMSC-031, ¶ 21 ("The fact[-]finder may reject [the] defendant's version of the incident."); *State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128 ("Determining credibility and weighing evidence are tasks entrusted to the trial court sitting as fact-finder."). Defendant did not apparently have any "reasonable concerns about the validity" of Officer Standridge's request for identification at the time of his detention. *Dawson*, 1999-NMCA-072, ¶ 12. In light of the evidence, we also conclude that the conviction for concealing identity under Section 30-22-3 is based on sufficient evidence regarding the element of concealment. *See Dawson*, 1999-NMCA-072, ¶ 9 ("[B]y refraining from stating any identity at all, one conceals one's identity."). In reviewing the evidence presented at trial for sufficiency, we disregard all evidence contrary to the verdict. *Smith*, 2016-NMSC-007, ¶ 19. Defendant's argument on this issue is therefore without merit.

### 3. Defendant's Intent

**{19}** We disagree with Defendant's contention that the evidence did not establish that he had the requisite intent to hinder or delay the officer's investigation. In this case, a fact-finder could reasonably infer from testimony that Defendant refused to produce identification or give the officer his name, that Defendant intended to hinder Officer Standridge in the discharge of her duties. *See State v. Andrews*, 1997-NMCA-017, ¶ 9, 123 N.M. 95, 934 P.2d 289 (using reasonable inference regarding intent to affirm conviction under sufficiency analysis). This is not a case in which Defendant's silence gave rise to the concealing identity charge. The evidence instead suggests that Defendant affirmatively misrepresented to Officer Standridge that he had no identification, despite having a state-issued identification card in his pocket. Because we indulge all reasonable inferences in support of the verdict, *Smith*, 2016-NMSC-007, ¶ 19, it is reasonable to infer from Defendant's misrepresentation that he intended to interrupt, obstruct, or hinder Officer Standridge's investigation.

### C. Attempt to Disarm

**{20}** Section 30-22-27 in pertinent part states:

> A.     Disarming a peace officer consists of knowingly:
>
> (1)     removing a firearm or weapon from the person of a peace officer when the officer is acting within the scope of his duties; or
>
> (2)     depriving a peace officer of the use of a firearm or weapon when the officer is acting within the scope of his duties.

. . . .

> C.      Whoever commits disarming a peace officer is guilty of a third degree felony.

A criminal attempt is "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." Section 30-28-1.

**{21}** The criminal information charged Defendant with attempt to disarm a peace officer under Section 30-22-27(A)(1). The written judgment convicted Defendant of Subsection (A)(1) of the statute. Defendant made a motion for directed verdict at the close of the State's evidence, during which he suggested that Subsection (A)(1) was inapplicable. In response, the State acknowledged that Subsection (A)(2), rather than Subsection (A)(1) applied to the facts of this case. The district court specifically cited to Subsection (A)(2) in ruling on Defendant's motion for directed verdict. During closing argument, the State again argued in support of a conviction under Subsection (A)(2). On appeal, both parties proffer arguments related to Subsection (A)(2). It appears that the parties as well as the district court impliedly made a constructive amendment to the indictment by charging Subsection (A) in its entirety, rather than specifying either Subsection (A)(1) or (A)(2). *See* Rule 5-204 NMRA (allowing information to be amended where the defendant's rights are not prejudiced by doing so, and disallowing acquittal absent such prejudice). Because Defendant neither objected to this alteration at trial, nor does he assert prejudice on appeal, we proceed to an analysis of whether a conviction under Subsection (A)(2) was supported by sufficient evidence.

## 1.    Defendant Acted Knowingly

**{22}** Defendant insists that the evidence produced at trial was insufficient to establish that he had the knowledge required by the statute. More specifically, Defendant suggests that to prove he acted "knowingly," the State was required to produce evidence that he grabbed the shotgun intending to keep the gun away from Officer Chavez or preventing Officer Chavez from using it.

**{23}** Direct evidence of knowledge and intent are rarely available. *State v. Glascock*, 2008-NMCA-006, ¶ 29, 143 N.M. 328, 176 P.3d 317. As such, intent and knowledge may be proved by circumstantial evidence. *See, e.g.*, *State v. Montoya*, 1966-NMSC-224, ¶ 10, 77 N.M. 129, 419 P.2d 970 ("Knowledge, like intent, is personal in its nature and may not be susceptible of proof by direct evidence. It may, however, be inferred from occurrences and circumstances. The act itself may be such as will warrant an inference of knowledge."). At trial, the State produced evidence that upon arriving at the hospital, Defendant grabbed the shotgun with both hands, despite his hands being cuffed behind his back, and tried to pull it through the opening in the partition separating the front and back seat of the patrol car. Given that the court, acting as fact-finder, can properly resolve conflicts in the evidence, the evidence produced at trial was sufficient for the district court to conclude that Defendant

intentionally grabbed the shotgun intending to pull it through the partition. It is reasonable, then, for the district court to infer that by intentionally grabbing the shotgun, Defendant knew that doing so would deprive Officer Chavez of its use. *State v. Dowling*, 2011-NMSC-016, ¶ 23, 150 N.M. 110, 257 P.3d 930 (noting that a defendant's actions can act as an indicia of the defendant's subjective knowledge, and acknowledging that circumstantial evidence alone can sustain a finding of subjective knowledge); *Cf. State v. Herrera*, 1991-NMCA-005, ¶ 10, 111 N.M. 560, 807 P.2d 744 (pointing out that the State is not required "to produce direct evidence of the defendant's subjective mental state" where the defendant was convicted for driving under a revoked license).

**{24}** Defendant also suggests that his voluntary intoxication diminished his ability to form the intent required under the statute. "[W]here a defendant claims that he was so intoxicated as to be unable to form the necessary intent, . . . the question of intent is a matter for the jury." *State v. Rayos*, 1967-NMSC-008, ¶ 6, 77 N.M. 204, 420 P.2d 314. Thus, whether Defendant was able to *knowingly* deprive Officer Chavez of the use of the shotgun, despite his voluntary intoxication, was a factual issue for the district court to decide. The district court heard Defendant's testimony that he grabbed the shotgun to prevent the officers from removing him from the car and heard Defendant admit to being highly intoxicated on the night in question. Again, as the fact-finder, the district court weighed Defendant's testimony against the officer's, and apparently concluded that Defendant acted knowingly when he grabbed the shotgun. We will not second guess the fact-finder's decision concerning the credibility of witnesses or substitute our judgment for that of the fact-finder. *E.g.*, *State v. Lucero*, 1994-NMCA-129, ¶ 10, 118 N.M. 696, 884 P.2d 1175. As such, Defendant's contention that his own voluntary intoxication prevented him from forming the requisite intent could properly be disregarded by the fact-finder.

## 2. "Use of a Firearm" Under Section 30-22-27(A)

**{25}** Defendant also suggests that in order to deprive a peace officer of "the use of a firearm" under the statute, the State needed to show that Defendant interfered with the officer's actual or probable use of the shotgun. We review this argument de novo because it presents an issue of statutory interpretation. *See, e.g.*, *State v. Erwin*, 2016-NMCA-032, ¶ 5, 367 P.3d 905 (conducting de novo statutory interpretation of a statute's term in order to evaluate the defendant's argument regarding sufficiency of the evidence), *cert. denied*, 2016-NMCERT-___, ___P.3d ___ (No. 35,753, Mar. 8, 2016). When interpreting a statute, we seek to fulfill the intent of the Legislature, and use the language of the statute as the primary indicator of that intent. *See, e.g.*, *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. When the language in a statute is plain and unambiguous, "we give effect to that language and refrain from further statutory interpretation." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50.

**{26}** Defendant interprets Section 30-22-27(A)(2)'s "use of a firearm" language as requiring the State to show that Officer Chavez was intending to use the weapon, or had need of it for some valid police purpose, at the time when Defendant had the weapon otherwise

9

engaged. Defendant cites to federal case law to support this position. That case law, however, is distinguishable based on the context in which the word "use" is used. In New Mexico's statute, "use" is not an active verb; it is a function of the firearm's mere presence, not much different than the words "access to." Both cases that Defendant cites refer to statutes that penalize a defendant who is demonstrated to have used *or carried* a firearm during the commission of a crime. *See Bailey v. United States*, 516 U.S. 137, 138, 142-43 (1995) (analyzing the meaning of "use" where the statute penalizes the defendant if he "uses or carries a firearm" during or in relation to a crime of violence or drug trafficking crime), *superceded by statute as stated in Welch v. United States*, 136 S. Ct. 1257 (2016); *United States v. Santiago*, 207 F. Supp. 2d 129, 146 (S.D.N.Y. 2002) (same). Defendant's reliance on these federal cases ignores that the plain language of the federal statute being applied dealt with the *actions* of using and carrying a firearm. *See* 18 U.S.C. § 924(C) (2006). Our statute's employing the word in the context of depriving an officer of the use of a firearm makes the word "use" a noun, rather than a verb.

**{27}** Defendant's interpretation of "use of a firearm" does not effectuate the plain language used by the Legislature. In the present case, the prevention of a hypothetical future use is an element of the crime. That hypothetical need not come to fruition in order for a defendant to deprive the officer of its use. The plain language of the statute penalizes a defendant for depriving an officer of the use of a firearm *at any point* during the officer's acting within the scope of his duties, rather than limiting its applicability to a deprivation that occurs only when the officer is attempting or intends an immediate use of the firearm.

**{28}** Having interpreted Section 30-22-27(A)(2) in such a way that interference with an officer's actual or probable use of a weapon is not required, we next turn to the issue of whether sufficient evidence exists to support the element that Defendant deprived Officer Chavez of the use of the shotgun. As discussed above, the State proffered testimony that Defendant grabbed the shotgun with both hands and was attempting to pull it through the partition when he was subdued by the officers. That is sufficient evidence to support a conclusion that Defendant committed an overt act in order to disarm Officer Chavez.

**{29}** We also agree with the district court that it is beyond dispute that Officer Chavez was acting within the scope of his duties. Thus, we conclude that the State met its burden of providing sufficient evidence that Defendant attempted to disarm a peace officer, contrary to Section 30-22-27(A)(2) and 30-28-1, and affirm Defendant's conviction.

## IV.    CONCLUSION

**{30}** We affirm both Defendant's conviction for concealing identity, contrary to Section 30-22-3, and his conviction for attempting to disarm a police officer, contrary to Section 30-22-27(A)(2) and Section 30-28-1. We remand, however, for the district court to revise the final judgment and sentence to reflect Defendant's second conviction was pursuant to Section 30-22-27(A)(2).

10

**{31}   IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**TIMOTHY L. GARCIA, Judge**