This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **A-1-CA-34521**

**ROBERT GENE CHESTER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Freddie J. Romero, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Public Defender
Santa Fe, NM
Tania Shahani, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     Defendant Robert Gene Chester appeals his convictions for conspiracy to commit arson and retaliation against a witness, challenging the sufficiency of the evidence. Defendant also argues for the first time on appeal that the jury was not properly instructed. Additionally, Defendant argues that the district court sentenced him above the statutory maximum for conspiracy to commit arson. We conclude that substantial evidence supported both convictions and that the lack of unrequested jury instructions did not constitute fundamental error. However, we hold that Defendant was incorrectly sentenced and remand for re-sentencing.

**BACKGROUND**

{2}     The underlying facts of this case are undisputed. Defendant was in an extramarital relationship with Kimberlee Egeler for almost ten years until she broke up with him in late 2010. Ms. Egeler—who initially bonded with Defendant over their mutual love of professional racing, drag racing, and cars—subsequently secured a restraining order against Defendant in May 2011. In October 2012, Ms. Egeler testified against Defendant in a separate matter. Based on Ms. Egeler's testimony, Defendant was convicted of aggravated stalking. As a result of the conviction, Defendant's probation was revoked in two other cases.

{3}     Early in the morning on November 20, 2012, before Defendant's sentencing for the aggravated stalking charge, Ms. Egeler awoke to find that one of her cars, a 2001 Chevrolet Monte Carlo SuperSport (the Monte Carlo), was on fire. Ms.

Egeler hosed down the hood of the car and after putting the fire out, she discovered the source of the fire was an aluminum bottle resting where the hood met the windshield. The fire marshal later identified the bottle, which he described as "some sort of Molotov Cocktail," as the likely source of the fire. Defendant was subsequently charged with conspiracy to commit arson and retaliation against a witness. The testimony at Defendant's trial was as follows.

{4}     Crystal Rose Servantez testified that she started the fire at the behest of her then-boyfriend, Isaiah Chavez, an inmate incarcerated in the same detention center as Defendant. Ms. Servantez testified that Mr. Chavez promised to pay her $400 to set the car on fire. However, Ms. Servantez never received the money. Ms. Servantez testified that she did not know Defendant or Ms. Egeler, and set the car on fire only because Mr. Chavez asked her to.

{5}     Celeste Chester, Defendant's wife of 41 years, also testified. She stated that prior to the incident, and while Defendant was incarcerated, she made two deposits of $200 in Mr. Chavez's detention center account at Defendant's request. Defendant told Mrs. Chester that he wanted to loan Mr. Chavez the money so he could afford medicine for his sick children. Mrs. Chester also testified that Defendant called her from the detention center to ask if she had heard about any "problems" out on the "west side of town" involving fire trucks.

3

**{6}** Ms. Egeler testified about the condition of the Monte Carlo. The Monte Carlo was in "good" condition besides some damage to the rear corner panel from a previous accident. Ms. Egeler made significant improvements to the Monte Carlo, including installing chrome wheels, NASCAR tires, and a chrome engine cover. She did not testify as to the car's purchase price or mileage. As a result of the fire, the Monte Carlo's windshield was cracked and the cowling by the windshield wipers and one wiper melted and leaked down through the wheel well, damaging the paint and hood. Ms. Egeler had insurance for the Monte Carlo and took the car in for repairs. After having the Monte Carlo repaired, Ms. Egeler received insurance documents giving a breakdown of the repairs and stating that the repairs cost $2,605.92.

**{7}** Defense counsel moved for directed verdict on both counts, challenging the sufficiency of the evidence. The district court denied Defendant's motion, holding that substantial evidence supported both the conspiracy to commit arson and retaliation against a witness charges. The defense did not present any additional evidence, and the jury returned a guilty verdict on both counts. This appeal followed.

**DISCUSSION**

**{8}** Defendant appeals his convictions on several grounds. First, Defendant argues that there was insufficient evidence to support his convictions. Second,

4

Defendant argues for the first time on appeal that the court failed to properly instruct the jury on the definition of the market value of the Monte Carlo for purposes of determining Defendant's level of culpability and the elements of the underlying felony (i.e., aggravated stalking) that formed part of the basis of the witness retaliation charge. Lastly, Defendant argues that he was erroneously sentenced for conspiracy to commit arson above the statutory maximum. We address each argument in turn.

**I.      Substantial Evidence Supported Both Charges**

**{9}**      "Our review of the denial of a directed verdict motion asks whether sufficient evidence was adduced to support the underlying charge." *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). " 'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and

5

inferences to the contrary." *Id.* (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665 (internal quotation marks and citation omitted). "Our role is to determine whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72.

## A. Conspiracy to Commit Arson

{10}    Defendant contends that there was insufficient evidence of an agreement between Defendant, Mr. Chavez, and Ms. Servantez to set fire to Ms. Egeler's Monte Carlo. We disagree. "Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2 (1979). "A conspiracy may be established by circumstantial evidence. Generally, the agreement is a matter of inference from the facts and circumstances." *State v. Gallegos*, 2011-NMSC-027, ¶ 26, 149 N.M. 704, 254 P.3d 655 (internal quotation marks and citation omitted); *see State v. Montoya*, 2015-NMSC-010, ¶ 53, 345 P.3d 1056 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)). Consistent with UJI 14-2810 NMRA, the jury was instructed, in *pertinent* part,

6

For you to find [D]efendant guilty of conspiracy to commit arson (over $2500) as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.    [D]efendant and another person by words or acts agreed together to commit arson (over $2500)[.]

{11}    Defendant argues that there was insufficient evidence of an agreement because Ms. Servantez testified that she did not know Defendant, and there was no direct evidence that Defendant knew about the agreement between Mr. Chavez and Ms. Servantez. However, as the State correctly points out, "[t]he prosecutor need not prove that each defendant knew all the details, goals or other participants." *Gallegos*, 2011-NMSC-027, ¶ 26 (internal quotation marks and citation omitted). Rather, the State was simply required to prove that Defendant agreed with another person by words or acts to commit a felony. *See* UJI 14-2810. In reviewing the evidence in the light most favorable to the verdict, we conclude that there was substantial evidence that Defendant agreed with another to set fire to Ms. Egeler's Monte Carlo.

{12}    While there was no direct evidence that Defendant agreed with Mr. Chavez or Ms. Servantez to set fire to the Monte Carlo, "[g]enerally, the agreement is a matter of inference from the facts and circumstances." *Gallegos*, 2011-NMSC-027, ¶ 26 (internal quotation marks and citation omitted). Ms. Servantez testified that she did not know either Defendant or Ms. Egeler, and that she set the fire to the

7

Monte Carlo because Mr. Chavez offered to pay her $400. At the time, Mr. Chavez was incarcerated at the same detention center as Defendant. Mrs. Chester testified that she deposited $400, the same amount that was promised to Ms. Servantez, into Mr. Chavez's detention center account at the direction of Defendant. While Defendant told his wife that the money was for Mr. Chavez's sick children, the jury was not required to believe this explanation and could rely on common sense and experience to make a reasonable inference that this was just a cover. *See State v. Phillips*, 2000-NMCA-028, ¶ 14, 128 N.M. 777, 999 P.2d 421 ("[T]he jury was free to use their common sense to look through testimony and draw inferences from all the surrounding circumstances." (internal quotation marks and citation omitted). Additionally, Defendant called his wife from the detention center and asked her if she had heard about any "problems" out on the "west side of town" involving fire trucks.

{13} Defendant's apparent motive also supported the verdict. Ms. Egeler broke up with Defendant and obtained a restraining order against him. She testified against Defendant a month before the incident, and as a result, he was convicted of aggravated stalking and had his probation revoked in two separate cases. Looking at the totality of the evidence, we conclude that, although circumstantial, there was substantial evidence that Defendant agreed with another person to set fire to Ms. Egeler's Monte Carlo. *See Gallegos*, 2011-NMSC-027, ¶ 26 ("The agreement . . .

may be shown to exist by acts which demonstrate that the alleged co-conspirator knew of and participated in the scheme."(internal quotation marks and citation omitted)).

{14}     Defendant also argues that there was insufficient evidence that the Monte Carlo had a market value over $2500. We are not persuaded. To support a conviction for conspiracy under Section 30-28-2, the State was required to prove that Defendant conspired to commit a felony. Arson is the malicious or willful starting of a fire with the purpose of destroying or damaging another person's property and constitutes a third degree felony when the damage is over $2,500 but not more than $20,000. *See* NMSA 1978, § 30-17-5(A), (E) (2006). Consistent with UJI 14-1701 NMRA, the jury was instructed that the State had to prove beyond a reasonable doubt that the Monte Carlo had a market value of over $2,500 in order to find Defendant guilty of conspiracy to commit arson. UJI 14-1707 NMRA defines "market value" as "the price at which the property could ordinarily be bought or sold just prior to the time of its destruction or damage."

{15}     As a preliminary matter, the State argues that UJI 14-1701 is fundamentally flawed and requires correction because it refers to *market value* of the property to determine the severity of the arson charge, whereas § 30-17-5 refers to the *damage* to the property. We recognize the discrepancy between the uniform jury instruction and the statute. *Compare* UJI 14-1701 *with* § 30-17-5. Nonetheless, "[u]niform

9

jury instructions are presumed to be correct." *State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076. We understand that "the adoption of a UJI 'does not preclude this Court from insuring that the rights of individuals are protected,' and this Court is free to amend, modify or abolish UJIs that have not been specifically addressed by the Supreme Court on appeal." *State v. Acosta*, 1997-NMCA-035, ¶ 14, 123 N.M. 273, 939 P.2d 1081 (alteration, internal quotation marks, and citation omitted). However, given our holding that there was substantial evidence of the Monte Carlo's market value, the State's argument is moot.[1] Nor does Defendant challenge the instruction on appeal.

{16}   Despite the potential discrepancy between the arson statute and the UJI, we analyze the evidence in light of the jury instructions submitted at trial. *See State v. Barreras*, 2007-NMCA-067, ¶ 3, 141 N.M. 653, 159 P.3d 1138 ("Because this is an issue that arose on [the d]efendant's directed verdict motion, we must analyze the evidence in light of the jury instructions submitted at trial."); *see also State v. Schackow*, 2006-NMCA-123, ¶ 8, 140 N.M. 506, 143 P.3d 745 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)).

---

[1] Moreover, the State did not object to the inclusion of UJI 14-1701. *See State v. Boeglin*, 1987-NMSC-002, ¶ 11, 105 N.M. 247, 731 P.2d 943 (holding that failure to object to erroneous jury instructions constituted waiver, but reviewing the issue for fundamental error).

**{17}**  Defendant contends that the State failed to prove that the Monte Carlo had a market value over $2,500 because the State only provided evidence of the cost of repair, which Defendant claims is irrelevant. Defendant cites *State v. Gallegos*, 1957-NMSC-052, 63 N.M. 57, 312 P.2d 1067 for the proposition that the jury cannot consider the Monte Carlo's cost of repair or replacement in determining market value. In *Gallegos*, the only evidence of the value of a stolen plow was the cost of materials and assembly that the victim paid $75 for years before it was stolen. *Id.* ¶¶ 1, 3. The jury found that the plow was worth $75 at the time it was stolen and found defendant guilty of larceny over $50. *Id.* ¶ 1. Our Supreme Court reversed, stating, "There was substantial evidence of value but this evidence all related to extrinsic or replacement value, the value obviously as found by the jury. But being limited to a consideration of market value only, the jury was not warranted in considering cost or replacement value." *Id.* ¶ 4.

**{18}**  We do not read *Gallegos* as holding that the jury cannot consider replacement cost as evidence of market value, but rather that the jury cannot simply substitute replacement cost for market value. As subsequent cases have made clear, juries are permitted to consider other evidence, such as replacement cost, when calculating market value. *See*, *e.g.*, *State v. Barr*, 1999-NMCA-081, ¶ 30, 127 N.M. 504, 984 P.2d 185, ("[The victim's] testimony of the purchase price of consumer goods, when coupled with information about the age and

11

condition of the goods, is sufficient by itself to allow a jury to draw reasonable inferences about the present market value of the items."); *State v. Hughes*, 1988-NMCA-108, ¶ 10, 108 N.M. 143, 767 P.2d 382 ("[The victim's] testimony was tantamount to an owner's opinion as to the value of the property in its condition at trial and also as to the cost of purchasing new replacement property. The jury could reasonably infer from this testimony that the price at which the property could ordinarily have been bought or sold was in excess of $100 at the time it became received stolen property.").

{19}    Defendant argues that even if the jury could assess the Monte Carlo's market value with evidence of its cost of repair, the State failed to meet its burden because there was no evidence that the vehicle's cost of repair was less than its replacement cost. In support of his argument, Defendant cites to *State v. Fernandez*, 2015-NMCA-091, 355 P.3d 858. In *Fernandez*, the defendant was charged with felony criminal damage to property in excess of $1,000 after ramming his car into the victim's twelve-year-old pickup truck. *See id.* ¶¶ 2, 3. At trial, the victim testified to the truck's damage, including a "destroyed" back bumper, a misaligned tailgate, and a severe dent in the front door. *Id.* ¶ 6. Additionally, the victim testified that the cost to repair the damage was about $1,500. *Id.* However, the State did not offer testimony as to the condition of the truck, its mileage, or its likely replacement cost. *Id.* ¶ 7. On appeal, the defendant argued that the State did not

12

meet its burden in proving the amount of damage per UJI 14-1510 NMRA because the State did not prove that the truck's cost of repair was less than the replacement cost. *Fernandez*, 2015-NMCA-091, ¶ 7. We noted, "In some cases . . . the facts may clearly establish that the replacement cost would exceed the cost of repair and no additional evidence or testimony may be required[.]" *Id.* ¶ 9. However, we concluded that without more information such as mileage, "the 'average juror' had no basis upon which to determine that the replacement cost of [the victim's] pickup truck, which was over a decade old and had noticeable preexisting damage, would be 'well over' the $1500 cost of repair." *Id.* ¶ 10. Thus, we held that the State failed to meet its burden in proving felony property damage. *Id.* ¶ 12.

{20}     *Fernandez* is distinguishable. Unlike *Fernandez*, where the victim testified only that the truck's repair costs were about $1,500, *see id.* ¶ 6, the State, here, presented evidence indicating that Ms. Egeler's insurance company paid for the repairs. We find this distinction significant. While the State did not present any direct evidence of the Monte Carlo's market value or replacement cost, the jury was permitted to make logical inferences and draw on their own life experiences to conclude that Ms. Egeler's insurance company would not have paid for $2,605.92 worth of repairs if it had been cheaper to "total" the vehicle and pay for its market value or replacement cost. *See*, *e.g.*, *State v. Cobrera*, 2013-NMSC-012, ¶ 15, 300 P.3d 729 (permitting the jury to draw on their own knowledge and life experiences

13

to conclude that the cost of repairing or replacing damaged items exceeded $1,000); *State v. Barreras*, 2007-NMCA-067, ¶ 9, 141 N.M. 653, 159 P.3d 1138 (permitting the jury to infer that the replacement cost of a year-old Cadillac Escalade in good condition would be greater than the $5,100 cost of repair). Moreover, unlike *Fernandez*, where the condition of the truck was unknown, *see id.* ¶ 7, Ms. Egeler, a car enthusiast, testified that the Monte Carlo was in "good" condition and had numerous upgrades such as a chrome wheels, specialty tires, and a chrome engine cover.

{21} Defendant argues that the average juror would not understand how insurance companies handle claims. However, in light of our Mandatory Financial Responsibility Act requiring that all motor vehicles be insured, *see* NMSA 1978, § 66-5-205 (2013), we are not convinced that the average juror could not understand the basics of insurance coverage and claims. Defendant also argues that since the State did not introduce the actual insurance bill into evidence, it was unclear if the bill included repairs for the Monte Carlo's preexisting damage. However, "we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Largo*, 2012-NMSC-015, ¶ 30 (internal quotation marks and citation omitted). Given our standard of review, we conclude that it was reasonable for the

14

jury to infer that Ms. Egeler's insurance company would not pay to repair preexisting damage on the Monte Carlo.

**{22}** Given Ms. Egeler's testimony about her insurance coverage and her vehicle's condition and upgrades, we conclude that there was substantial evidence that the Monte Carlo's market value exceeded $2,500, and consequently, that substantial evidence supported his conviction for conspiracy to commit arson.

**B.    Retaliation Against a Witness**

**{23}** To support a conviction for retaliation against a witness, the State was required to prove that Defendant "knowingly engag[ed] in conduct that cause[d] . . . damage to the tangible property of another person[] . . . with the intent to retaliate against any person for providing any information relating to the commission or possible commission of a felony offense or a violation of conditions of probation[.]" NMSA 1978, § 30-24-3(B) (1997); *see* UJI 14-2404 NMRA. Defendant claims that that State failed to present sufficient evidence that Defendant knowingly engaged in conduct that damaged Ms. Egeler's Monte Carlo because "the link between [Defendant] and Ms. Servantez was never conclusively established by the State." However, direct evidence of knowledge and intent is rarely available, and thus, knowledge and intent may be proven by circumstantial evidence. *See State v. Ortiz*, 2017-NMCA-006, ¶ 23, 387 P.3d 323 (noting that knowledge and intent may be proved by circumstantial evidence). As

15

discussed above, there was sufficient evidence, although circumstantial, that Defendant engaged in a conspiracy to set fire to Ms. Egeler's car. Ms. Servantez testified that she set Ms. Egeler's Monte Carlo on fire at the behest of Mr. Chavez in exchange for $400. Defendant's wife testified that Defendant asked her to deposit $400 into Mr. Chavez' detention center account. She also testified that Defendant called her to ask if she had heard of any "problems" out on the "west side of town" involving fire trucks. Furthermore, there was substantial evidence of Defendant's motive to retaliate against Ms. Egeler for testifying against him. Viewing this evidence as a whole and in the light most favorable to the verdict, we conclude that there was substantial evidence that Defendant knowingly engaged in conduct that caused damage to Ms. Egeler's property.

{24}     Defendant next argues that the State failed to prove that Defendant committed acts constituting aggravated stalking. Defendant's aggravated stalking conviction was the underlying felony proceeding in which Ms. Egeler testified. Specifically, Defendant challenges the State's decision to substantiate the underlying felony by entering into evidence a judgment and sentence rather than having Ms. Egeler testify as to Defendant's actions constituting aggravating stalking. However, we perceive no error in the State's method of proof. Ms. Egeler testified that she secured a restraining order against Defendant and served as a witness against Defendant in another case on October 17, 2012. Instead of eliciting

16

testimony about the underlying felony in that case, the State entered into evidence a redacted judgment and sentence showing that "Defendant was convicted on October 17, 2012 . . . of the offense of Aggravated Stalking (Violation of Protection Order) . . . a third degree felony[.]" Additionally, the State entered into evidence two orders revoking Defendant's probation in separate matters as a result of his felony aggravated stalking conviction. Besides arguing that the jury should have been instructed on the underlying felony's elements, an unpreserved claim of error, which we address below, Defendant fails to provide any support for the contention that this evidence was insufficient to prove that Defendant committed the felony of aggravated stalking, and we assume none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Therefore, we conclude that substantial evidence supported Defendant's conviction for retaliation against a witness.

**II.      Failure to Instruct the Jury Did Not Constitute Fundamental Error**

{25}      Because Defendant failed to preserve any error with respect to the failure to properly instruct the jury, we review only for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the

17

accused." *Barber*, 2004-NMSC-019, ¶ 17. When this Court reviews jury instructions for fundamental error, we will only reverse the jury verdict if doing so is "necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). In reviewing a district court's failure to instruct, "[w]e first determine whether a reasonable juror would have been confused or misdirected by the jury instructions." *Id.* ¶ 20. (alteration, internal quotation marks, and citation omitted). "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**A.     Failure to Instruct on Definition of Market Value**

{26}     Consistent with UJI 14-1701, the jury was instructed as to all the essential elements of arson, including the requirement that the burned property have a market value over a certain amount. However, Defendant claims the district court committed fundamental error in failing to provide the jury with the definition of "market value" contained in UJI 14-1707. In most cases, the failure to instruct on a definition or amplification of an essential element does not rise to the level of fundamental error. *See Barber*, 2004-NMSC-019, ¶ 20. Moreover, "definitional instructions are [generally] not required when the terms are used in their ordinary

18

sense and no error is committed in refusing to instruct on a term or word with a common meaning." *State v. Gonzales*, 1991-NMSC-075, ¶ 30, 112 N.M. 544, 817 P.2d 1186. UJI 14-1707 defines "market value" as "the price at which the property could ordinarily be bought or sold just prior to the time of its destruction or damage." Defendant contends that there is no standard legal definition for market value, and consequently there is no common definition that the average juror can rely on. In support of his argument, Defendant cites UJI 14-1510 and UJI 14-1602 NMRA, which define market value for other crimes, to illustrate "differing legal definitions." However, both UJI 14-1510 and UJI 14-1602, as well as UJI 14-1707, define market value in essentially the same way as the price at which the property could ordinarily be bought or sold. *Compare* UJI 14-1510, *with* UJI 14-1602, *and* UJI 14-1707. Moreover, Defendant fails to show, and we fail to see, how the legal definition varies from its ordinary common sense definition.

{27}     To illustrate his point that the average juror could not decipher the meaning of "market value" without a definition, Defendant highlights an exchange between defense counsel and the district court where the attorney argued that the State failed to prove "diminution in value" and the district court replied that the State provided substantial evidence of "cost of repair." However, we are not persuaded that this exchange compels us to find that the jury could not use a common sense

19

definition of "market value" similar to UJI 14-1707.[2] Given the fact that the jury was provided with all the essential elements of arson, and given that "market value" is merely a definitional instruction for a term with a common meaning, we conclude that the failure to give UJI 14-1707 did not constitute fundamental error.

**B.      Failure to Instruct on Elements of Aggravated Stalking**

{28}      Consistent with UJI 14-2404, the court instructed the jury, in relevant part,

> For you to find [D]efendant guilty of retaliation against a witness as charged in Count 1, the state must prove to your satisfaction beyond a reasonable doubt . . . [that he] engaged in the conduct with the intent to retaliate against [Ms.] Egeler for providing information to a law enforcement officer relating to the commission or possible commission of aggravated stalking or a violation of conditions of probation[.]

Defendant argues that the failure to provide the jury with the elements of aggravated stalking was fundamental error. In support of his argument, Defendant points to UJI 14-2404 use note 2, which instructs, "Unless the court has instructed on the essential elements of the felony or attempted felony, these elements must be given in a separate instruction, generally worded as follows: 'In New Mexico, the elements of the crime of [the felony that the witness provided information to a law enforcement officer regarding] are as follows: . . . (summarize elements of the felony)[.]' " (emphasis omitted). However, besides highlighting use note 2's

---

[2] Indeed, this confusion may have stemmed from the potential discrepancy between the arson statute and the UJI, as discussed above. *Compare* § 30-17-5, *with* UJI 14-1701.

20

mandatory language, Defendant fails to specify how the jury was confused by the lack of a separate instruction on the elements of aggravated stalking. As UJI 14-2404 makes clear, the jury was not required to find that Defendant actually committed the underlying felony, but rather that he engaged in conduct intending to retaliate against the victim for providing information relating to the commission or possible commission of a felony. Thus, the elements of the underlying felony or attempted felony were not essential elements, and we find no fundamental error in failing to provide them. *See Barber*, 2004-NMSC-019, ¶ 20 (agreeing that in most cases "the failure to instruct on a definition or amplification of an essential element, *even when called for in an official UJI Use Note*, does not rise to the level of fundamental error." (Emphasis added.)).

### III. Defendant Was Erroneously Sentenced For Conspiracy to Commit Arson

{29}     Lastly, Defendant contends, and the State concedes, that he was erroneously sentenced to three years for conspiracy to commit arson above the statutory maximum. We agree. Section 30-17-5(E) provides, "Whoever commits arson when the damage is over two thousand five hundred dollars ($2,500) but not more than twenty thousand dollars ($20,000) is guilty of *a third degree felony*." (Emphasis added.) The conspiracy statute in turn provides that "if the highest crime conspired to be committed is a third degree felony or a fourth degree felony, the person committing such conspiracy is guilty of a fourth degree felony." Section

21

30-28-2(B)(3). The sentencing authority provided in NMSA 1978, § 31-18-15(A)(13) (2009) indicates that the basic sentence for a fourth degree felony is eighteen months imprisonment. Because Defendant was sentenced to three years, a sentence beyond what is statutorily authorized, we remand to the district court for re-sentencing for conspiracy to commit arson consistent with statutory authority. *See State v. Wyman*, 2008-NMCA-113, ¶ 2, 144 N.M. 701, 191 P.3d 559 ("The power of a trial court to sentence is derived exclusively from statute[.]").

**CONCLUSION**

{30} For the foregoing reasons, we affirm Defendant's convictions. We remand to the district court for re-sentencing consistent with this opinion, and the entry of an amended judgment and sentence.

{31} **IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**M. MONICA ZAMORA, Chief Judge**


_____
**JACQUELINE R. MEDINA, Judge**